## Lampl *v.* Latkanich et ux., Appellants.

84

Argued April 12, 1967. Before ERVIN, P. J., WRIGHT, WATKINS, MONTGOMERY, JACOBS, HOFFMAN, and SPAULDING, JJ.

*Gilfert M. Mihalich,* for appellants.

*Bernard S. Shire,* with him *Ezerski & Shire,* for appellee.

OPINION BY HOFFMAN, J., June 16, 1967:

This is an appeal from the judgment of the Court of Common Pleas of Westmoreland County awarding $5,580 to the plaintiff for legal services rendered.

Plaintiff Sanford M. Lampl is an attorney specializing in business and corporate law. Defendant Paul Latkanich was, until 1963, a substantial investor in the Bonita Corporation, a closely held company engaged in real estate speculation in Florida.

In January, 1959, Paul Latkanich employed the plaintiff to represent him and to protect his interest in the corporation. At that time, the corporation was overextended and threatened with substantial litigation. In addition, its four equal shareholders were unable to resolve certain internal differences. Defendant had been excluded from meetings of the corporation,

had ceased receiving information with regard to its affairs, and was deeply concerned that friends who had purchased land from Bonita would find their investment worthless.

Plaintiff and the husband-defendant signed an initial letter agreement, in which the plaintiff agreed to represent the defendant.[1] In return, the defendant agreed to pay a contingent fee of ten percent of "anything of value" recovered or realized from the corporation.

In March, 1959, after the plaintiff had discovered the complexity of the task confronting him, the parties renegotiated the terms of his employment. The contingent fee arrangement was altered somewhat, and, since it had become clear that both Mr. *and* Mrs. Latkanich wished to retain the plaintiff, the signatures of both parties were obtained on a formal written agreement. Thereafter, the plaintiff represented both defendants until April 10, 1961, when he was summarily discharged. At that time, the husband-defendant had not yet disposed of his stock interest in the Bonita Corporation. The principal contingency which was to determine the amount of plaintiff's fee had, therefore, not yet occurred.

In April, 1963, the plaintiff instituted this suit to recover compensation for his efforts on behalf of the defendants. He estimates that he worked approximately 290 hours on their affairs in the course of his employment. He attended at least 62 meetings and conferences, and spent numerous evenings and weekends in his effort to protect and enlarge their interest in

---

[1] The language of the agreement is not altogether clear. It reads: "I agree to represent you and prosecute your claim to final determination, including but not limited to an accounting of your rights as a stockholder . . . and also, if necessary, claims for accountings against the other stockholders or interested parties of the Bonita Corporation."

the corporation. Because of the strained personal relations between defendants and the remaining stockholders, the plaintiff secured the Latkanich's proxy and attended all meetings of the corporation in their place. He became a director and an officer, and in September, 1960, he obtained the votes of the other directors for the election of Mr. Latkanich to the post of Assistant Vice President. In the meantime, the real estate business in Florida weathered its financial storms. The threatened litigation involving the corporation was favorably resolved, and the possible losses to defendant's friends were avoided.

At the time of trial, plaintiff had received for his services only an initial retainer and certain incidental payments amounting to $1710. He valued the unpaid portion of his services at $5790, computed at the rate of $25 per hour. An attorney, called as an expert witness, readily concurred in this valuation. The jury awarded him $5580, $210 less than the face amount of his claim, and judgment was entered against both defendants. From that judgment, the defendants now appeal.

Both parties agree that, if the plaintiff was discharged without fault on his part, he may recover the reasonable value of the services he performed for the defendants. His right to do so cannot be defeated simply because there is no basis for computing the percentage fee provided for in the contract. "Having made the performance of the contract impossible by his own act in rescinding that contract, [the defendant cannot] leave the plaintiff without an effective remedy." *Thole v. Martino,* 56 Pa. Superior Ct. 371 (1914). As we stated in *Sundheim v. Beaver County Building & Loan Association,* 140 Pa. Superior Ct. 529, 533, 14 A. 2d 349 (1940): "A client may terminate his relation with an attorney at any time, notwithstanding a contract for fees, but if he does so, thus making the per-

formance of the contract impossible, the attorney is not deprived of his right to recover on a quantum meruit a proper amount for the services which he has rendered. . . ." See also *Jaffe v. Alliance Metal Company, Inc.,* 337 Pa. 449, 12 A. 2d 13 (1940); *United Mercantile Agencies v. Slotsky,* 107 Pa. Superior Ct. 467, 164 A. 349 (1933).

Conceding all of the above, the defendants nevertheless argue that plaintiff Lampl cannot recover in quantum meruit, because, in this action, he "chose to base his claim on [a] written contract." They note that the words "quantum meruit" do not appear anywhere in plaintiff's pleadings, and that copies of the two written agreements were attached to his amended complaint. They further rely on the decision of our Supreme Court in *Zawada v. Pennsylvania System Board of Adjustment,* 392 Pa. 207, 140 A. 2d 335 (1958).

*Zawada* was an action for compensation for services, in which the plaintiff failed to prove the express oral contract on which she based her claim. After a verdict for defendant, the trial court refused to permit the plaintiff to amend her pleadings to set up a count in quantum meruit. The Supreme Court affirmed, noting that the "only possible implication" of the plaintiff's complaint was that she was suing on an express contract, the theory on which the case was tried. To permit such an amendment *after the verdict,* the Court held, would be highly prejudicial to the defendant.

In the instant case, however, the pleadings, fairly read, were sufficient to put the defendants on notice that quantum meruit was the basis, or one of the bases, of the plaintiff's claim. Plaintiff's amended complaint, for example, seeks the *"reasonable value* of the services rendered" to the defendants, and includes an itemized statement of the work performed on their behalf.

While it is true that copies of the written agreement are attached to the plaintiff's pleadings, this alone cannot constitute an "election" as to his theory of recovery. At most, it signified that the plaintiff was proceeding in the alternative, both on the contract[2] and in quantum meruit, as permitted by Rule 1020(c), Pa. R. C. P.

The defendants next contend that the jury's verdict in the amount of $5580 was "inconsistent with the facts as . . . admitted by plaintiff's case." This contention is without merit. We have examined the record carefully and find that the plaintiff admitted only that the defendants were entitled to credit in the amount of $210. Defendants cannot complain that the jury ignored plaintiff's testimony in this regard, since it awarded him precisely $210 less than the face amount of his claim.

The defendants also argue that they are entitled to credit for certain fees paid directly to the plaintiff by the corporation. President Judge WEISS, in the court below, ably disposed of this contention. "This money was paid plaintiff to defend Bonita Corporation in two lawsuits, one in Pennsylvania and one in Florida. Plaintiff's testimony was that this employment was with the permission of defendants, posed no present or potential conflict of interests to them, and, in fact, promoted their welfare at the corporation's expense. The corporation, of course, was, from the beginning, aware of defendant's employment of plaintiff contemporaneously. . . . [T]he jury could properly conclude that defendants were not entitled to credit [for] the funds

---

[2] A few cases suggest that the plaintiff may, occasionally, be entitled to full compensation for what he would have earned under the contract, in spite of the difficulty in ascertaining the amount of such damages. See *Charles L. Powers v. Abraham L. Rich*, 184 Pa. 325, 39 A. 62 (1898) ; *Bennett v. Sinclair Nav. Co.*, 33 F. Supp. 14 (1940) ; and generally, Annotation 136 A.L.R. 231.

which the corporation paid plaintiff for his services rendered to the corporation. There seems to be no question that these were additional services and that defendants were not being charged with any duplicated services."

Defendants next argue that entry of judgment against Mrs. Latkanich was improper, apparently because the Latkanich's stock in the Bonita Corporation was registered in the husband's name only. The trial court quite properly rejected this contention. The proposition that one cannot be held liable to an attorney on an employment contract, unless one has a *direct* pecuniary interest in the subject matter of the litigation is utterly without support in the case law. The question for the jury to determine was not who owned the stock, but who hired the plaintiff, cl. 17A C.J.S. "Contracts" §346. Based on considerable testimony,[3] the jury properly concluded that Mrs. Latkanich was jointly liable, with her husband, for the work performed by plaintiff Lampl.

Finally, the defendants contend that the trial court erred in refusing their requested point for charge: "That if the jury finds that attorney Lampl was prop-

---

[3] For example, the plaintiff testified:

"Well, Helen Latkanich, frankly, is the business brains of the Paul and Helen Latkanich operation, and she is the one with whom I had most of my dealings; she is the one who was in effect— I wouldn't say calling the shots, . . . she is the one with whom I had most of my negotiations, not Paul."

Mrs. Latkanich's testimony on direct examination plainly indicated that she had joined her husband in employing the plaintiff, and that she directed and approved the plaintiff's legal maneuvers on their behalf.

Thus, she stated: *"We* felt that any work that was done . . . was done for the benefit of the corporation and not for *us.*" [Emphasis supplied.]

Again, she testified: "Well, after that point, Mr. Mihalich, I could never feel confident in anything that Mr. Lampl would do for me."

erly discharged, they cannot find for the plaintiff in an amount that is more than he was entitled to under any valid contract."

The vagueness and ambiguity of this language is a source of real difficulty. It appears to mean that if the plaintiff was dismissed for cause, his limit of recovery is what he would have received under the ten percent contingent fee contract. This, in turn, is to be measured, apparently, by the $10,000 the defendants eventually received for their stock, more than 2½ years after they discharged the plaintiff. We are referred to no case in any jurisdiction in support of such a rule, and we have discovered none. If we have correctly interpreted the requested point for charge, it states an erroneous rule of law and was, for that reason, properly refused.

The correct rule appears to be that an attorney is entitled to no compensation whatever, if he is discharged because of his own wrongful acts. See, e.g., *In re Woodworth,* 15 F. Supp. 291 (S.D. N.Y. 1936), aff'd, 85 F. 2d 50 (2d Cir. 1936). After a careful reading of the record, however, we have not found sufficient credible testimony to substantiate defendants' allegations regarding plaintiff's misconduct.

Furthermore, the trial judge did instruct the jury to consider whether the "Latkanichs discharge[d] Lampl in good faith or just cause." In addition, he indicated that a verdict for the plaintiff would require a finding that his employment had been terminated "through no fault on his part. . . ." If the defendants wished clarification or elaboration of these points, it was their duty to make some more specific objection at trial. "A party may not remain silent and take his chances on a verdict and then, if it is adverse, complain of mere inadequacy which could have been corrected." *Koenig v. Flaherty,* 383 Pa. 187, 191, 117 A. 2d 719 (1955).

Judgment affirmed.