Mary Ann BOWES, Plaintiff,

v.

SUZUKI MOTOR COMPANY, LTD., a
Japanese Corporation, Defendant.

No. CIV.1995–179.

District Court, Virgin Islands,
D. St. Thomas.

Aug. 19, 2002.

Gordon C. Rhea, St. Croix, VI, for the plaintiff.

Joseph L. Messa, Philadelphia, PA, Formerly for the plaintiff.

Andrew Ominsky, Philadephia, PA, Formerly for the plaintiff.

Kwame Motilewa, Savannah, GA, Formerly for the plaintiff.

R. Eric Moore, St. Croix, VI, for the defendant.

### MEMORANDUM

MOORE, District Judge.

Before this Court is Mary Ann Bowes' ["Bowes" or "plaintiff"] petition requesting that this Court determine the appropriate award and allocation of attorneys' fees and costs in this matter. Upon consideration of the parties' motions, and review of this case's history, I find that counsel from the law firm of Ominsky & Messa, P.C. ["O & M"] disobeyed this Court's orders, misrepresented facts, and displayed a continuing lack of legal competence. Because O & M's conduct ultimately resulted in the dismissal of Bowes' punitive damages claim and the firm's removal from her case, I find that O & M is not entitled to recover its original contingency fee of forty percent (40%). Because O & M's work played a role in the ultimate settlement of the case, however, the firm is entitled to some compensation.

Bowes has proposed the following distribution of legal fees: thirty percent (30%) of Bowes' settlement (after costs) to be divided evenly between O & M and local counsel of Alkon, Rhea & Hart, with Kwame Motilewa (earlier local counsel) then taking thirty percent (30%) of O & M's recovery. For the following reasons, I find that this distribution is basically reasonable and fair, and therefore, will adopt it, except that Motilewa shall recover fifteen percent (15%) of O & M's recovery.

### I. FACTUAL AND PROCEDURAL BACKGROUND

Bowes initiated this suit against Suzuki Motor Company, Ltd. ["Suzuki" or "defendant"], alleging that injuries she suffered while a passenger in a Suzuki vehicle were due to the defective design of the car. She sought both compensatory and punitive damages. On December 9, 1993, Bowes entered into a written fee agreement with Joseph L. Messa, Jr. ["Messa"] of the then-Pennsylvania law firm, Ominsky & Messa, P.C.[1] According to the terms of the fee agreement, O & M was to receive

---

**1.** Since the fee agreement is with O & M, I decide the amount of fees and costs to O & M, even though both Albert Ominsky and Messa have, through independent correspondence, advised this Court that the law firm of Ominsky & Messa no longer exists and that each claims an interest in those fees and costs. I leave the further distribution of the award of

40% of the amount recovered by way of settlement, judgment or otherwise, after deduction of costs, disbursements and expenses in the investigation and prosecution of the case.

(Bowes' Pet. to Deter. Att'y's Fees, Ex. 1.) O & M's lawyers were admitted to practice *pro hac vice* in this Court to prosecute her case. O & M also retained as local counsel Kwame O. Motilewa ["Motilewa"]. According to the agreement between O & M and Motilewa, Motilewa was to receive fifteen percent (15%) of the attorneys' fees if Bowes' case settled, and thirty percent (30%) of the fees if the case proceeded to trial. (*Id.* Ex. 2.)

On December 17, 1997, Suzuki asked for production of copies of any and all documents that Bowes intended to use to support her punitive damages claim. (*See* Req. to Produc. to Pl.) On February 10, 1998, the magistrate judge issued an order requiring Bowes' attorneys to respond to punitive damages discovery by May 1, 1998. (*See* Order, Civ. No.1995–179 (D.V.I. Feb. 10, 1998).) At a scheduling conference on July 16, 1998, defendant's counsel advised the magistrate judge that plaintiff's attorneys had failed to respond fully to Suzuki's discovery requests. Plaintiff's lawyers also had served incomplete and inappropriate answers to other discovery propounded by defendant. Accordingly, the magistrate judge issued a second order instructing Bowes' lawyers to respond to Suzuki's request for punitive damages discovery by August 15, 1998, explicitly stating that there would be "[n]o further extensions." (*See* Order, Civ. No.1995–179 (D.V.I. July 16, 1998).) Bowes' counsel, without seeking relief

from the magistrate judge's orders, again failed to comply with the deadline for punitive damages discovery. Next, on December 8, 1998, in connection with his denial of plaintiff's motion to reconsider his earlier order denying her motion to compel production of documents,[2] the magistrate judge stated that all discovery was to be completed by October 1, 1999. (*See* Order, Civ. No.1995–179 (Dec. 8, 1998).)

Because Bowes' attorneys failed to respond to Suzuki's discovery requests on her punitive damages claim, Suzuki moved to dismiss the punitive damages claim as a sanction. (Def.'s Mot. to Dismiss Punit. Damages at 1–2.) I heard oral argument on April 23, 1999, during which plaintiff's lawyers claimed that they could not comply with the magistrate judge's orders because Suzuki had failed to produce certain information that they needed. The record demonstrated, however, that Suzuki had complied with two separate requests for production and one set of interrogatories. Indeed, as noted above, the magistrate judge had denied Bowes' motion to compel production. I therefore rejected counsel's argument and granted the defendant's motion, finding that Bowes' counsel had flagrantly violated both of the magistrate judge's discovery orders. (*See* Order, Civ. No.1995–179, at 2–3 (D.V.I. July 8, 1999).) Moreover, I found that Bowes' lawyers had not promptly attempted to obtain this information and had failed to provide any believable explanation why they did not comply with this Court's orders. Accordingly, I dismissed the punitive damages claim. In addition, I warned O & M that I would not "tolerate this conduct and that if

---

fees and costs to O & M to the attorneys who claim an interest in it.

**2.** On September 17, 1998, Bowes had filed a motion to compel production of documents from Suzuki. On November 13, 1998, the magistrate judge had denied the plaintiff's motion as moot, having found that the defendant had filed responses to the plaintiff's discovery requests. (*See* Order, Civ. No.1995–179 (D.V.I. Nov. 13, 1998).)

brought before the Court again, the Court [would] consider revoking the admission *pro hac vice* of Mr. Messa or any other attorney who conducts herself or himself in this manner." (*Id.* at 5–6.)

Bowes' attorneys moved for reconsideration of the order dismissing the punitive damages claim, and on September 24, 1999, I held a further a hearing on the matter. At the hearing, Andrew D. Swain ["Swain"], then working for O & M, contended that I had erred in finding that Bowes' counsel had not complied with the magistrate judge's discovery orders dated February 10, 1998 and July 16, 1998. He attempted to claim that the magistrate judge had extended the date for discovery on the punitive damages claim in his December 8, 1998 order when he simultaneously denied the plaintiff's motion to reconsider his order denying the plaintiff's motion to compel and set a general discovery deadline for October 1, 1999. (*See* Hr'g on Mot. for Recons. at 8–13, 21.) Swain's argument, however, was disingenuous at best. The magistrate judge twice had set discovery deadlines specifically for the punitive damages claim and Bowes' attorneys let both of these deadlines pass without producing any documents or seeking additional time. Since O & M had requested no additional time for discovery on punitives, there was absolutely no basis for Swain to believe, let alone contend, that the magistrate judge's order of December 8, 1998 setting a deadline for general discovery could have applied to the punitive damages discovery. I therefore found O & M's presentation to the Court to have been misleading.

In addition to misrepresenting the magistrate judge's orders, plaintiff's counsel displayed an appalling lack of understanding of the rules of this Court and common legal procedure. At the hearing, Swain contended that, by moving for reconsideration of the magistrate judge's order denying Bowes' motion to compel, O & M had taken every possible step to obtain relief from that order. Swain, however, conceded that Bowes' lawyers had not exercised their right to seek my review of the magistrate judge's orders. Indeed, he made it clear that O & M did not even understand that they had right to do so under the Federal Rules of Civil Procedure and the local rules of this Court. To my dismay, when I asked Swain how one would seek relief from the magistrate judge's orders, he stated that one would seek "an interlocutory appeal" to the Court of Appeals for the Third Circuit! (*See id.* at 24–25.) Based on O & M's misrepresentations and distortions of the magistrate judge's orders and demonstrated lack of legal competence, I found O & M's behavior to have been "beyond the pale," denied the motion for reconsideration, and revoked O & M's *pro hac vice* right to practice or represent Bowes in the District Court of the Virgin Islands. (*Id.* at 67–68.)

By this time, Bowes' initial local counsel, Kwame Motilewa had relocated from the Virgin Islands to the mainland and Bowes had retained the law of firm of Alkon, Rhea and Hart ["AR & H"] as replacement local counsel. No agreement on legal fees with AR & H has been provided to the Court. In January 2000, the parties mediated Bowes' claim and settled the case for $325,000.

In light of the dismissal of Bowes' punitive damages claim and the revocation of O & M's right to represent her *pro hac vice*, Bowes now moves this Court to determine the appropriate attorneys' fees and costs for O & M, Motilewa, and AR & H. Specifically, she requests that her original agreement with O & M for a forty percent (40%) contingency fee be reduced to thirty percent (30%). She argues that a forty per-

cent (40%) fee "is a premium fee for premium representation," and that O & M failed to deliver such premium representation, as their behavior resulted in the dismissal of her punitive damages claim and the revocation of their *pro hac vice* status. (Pet. to Deter. Att'y's Fees and Costs at 3.)

In lieu of her agreement with O & M, Bowes proposes the following allocation of attorneys' fees. First, that this Court set the total fee at thirty percent (30%) of her $325,000 settlement agreement, *after* costs. Second, that AR & H receive one-half of this amount and O & M the other half. Finally, Bowes submits that Motilewa should receive thirty percent (30%) of O & M's half, giving him fifteen percent (15%) of the total settlement recovery, as per his agreement with O & M. Essentially, under Bowes' proposal, of the thirty percent (30%) award, AR & H would receive 50%, O & M 35%, and Motilewa fifteen percent (15%).

O & M counters that this Court should not disturb its contingent fee agreement with Bowes, and insists that she is obligated to pay the firm forty percent (40%) of her total settlement amount, *before costs are taken out.* O & M maintains that its involvement in Bowes' case has been extensive, and that its lawyers worked on the case from its inception in 1993 until the settlement was obtained in 2000. O & M points out that Bowes did not terminate her relationship with O & M immediately after this Court's rescission of its *pro hac vice* status, but waited to do so until after the settlement. (O & M's Resp. to Pet. for Atty's Fees and Costs at 1–7.)

O & M contends that it (1) prepared seventy-three percent (73%) of the correspondence or internal memorandum for Bowes, (2) prepared ninety-three percent (93%) of the pleadings, (3) attended eighty-two percent (82%) of the depositions, (4) prepared 100% of the responses to written discovery, (5) drafted 100% of the discovery served on the defendant, and (6) worked with 100% of the experts consulted in the case. (*Id.* at 4.) O & M maintains that, by contrast, AR & H's involvement in the case "was comparatively limited." (*Id.* at 2.) According to O & M, AR & H's main role was to "sign and file pleadings, advise [O & M] of local procedure, and to participate in the case if [O & M] attorneys were not available." O & M contends that AR & H (1) prepared seventeen percent (17%) of the correspondence, (2) did not enter its appearance until four (4) years after O & M began investigating the accident, (3) prepared less than five percent (5%) of the pleadings, and (4) did not draft any discovery to be served on defendant. (*Id.* at 4–5.) O & M asserts that, after its *pro hac vice* status was rescinded, AR & H "heavily relied" on O & M to (1) coordinate medical examinations for Bowes, (2) prepare expert witnesses, (3) draft a Response to the Summary Judgment Brief, and (4) travel to Florida to assist Bowes and attorney Gordon Rhea ["Rhea"] with the mediation. (*Id.*)

With respect to its understanding of the role of local counsel, O & M contends that when Motilewa returned to the mainland in May 1998, AR & H was retained as co-counsel for Bowes. The attorneys did not enter into a separate fee agreement, and O & M claims that its understanding of the fee sharing arrangement was that AR & H would assume Motilewa's position and would be entitled to fifteen percent (15%) of the attorneys' fees if the case settled, or thirty percent (30%) if it went to trial. (*Id.* at 3–4.)

O & M submits, therefore, that a reduction of the total fee to thirty percent (30%) is contrary to the terms of the contract and unfair in light of principles of equity. O & M proposes that it is entitled to forty

percent (40%) of the $325,000 settlement, and that fifteen percent (15%) of this award should be split evenly between AR & H and Motilewa. (*Id.* at 8.) O & M avers that I should not disturb the fee arrangement between it and Bowes because the firm continued to "work diligently" preparing the case for mediation even after the revocation of its *pro hac vice* status, and that Bowes "enjoyed the benefits" of her fee arrangement with O & M. Finally, O & M avers that, even if I disregard the fee agreement, it is entitled to a forty percent (40%) recovery on a *quantum meruit* basis. (*Id.* at 12–13.)

Bowes asserts that O & M did not, in fact, fulfill the terms of the contract because it did not prosecute her claim to its conclusion. (Bowes' Reply to O & M's Resp. to Petit. at 3.) She argues that the revocation of O & M's *pro hac vice* status, brought about by O & M's own doing, amounted to a voluntary withdrawal as her counsel. (*Id.*) Although O & M asserts that it spent a great deal of time on Bowes' case, Bowes contends that I should focus on the *results* of that work, not just the hours. She maintains that the dismissal of her punitive damages claim required AR & H to "negotiate with its right hand tied behind its back" because O & M's behavior had cost Bowes her "best negotiating chip." (*Id.* at 7.)

### B. Costs

Bowes also asks this Court to reduce O & M's submitted costs. She avers that she should not be required to pay for the costs related to (1) copying her files for AR & H once O & M had been removed from her case or (2) O & M's defense of its conduct. (Bowes' Pet. to Deter. Att'y's Fees and Costs at 3–4.)

O & M has submitted $51,323 in costs, and argues that the copying costs are "standard charges in Pennsylvania and are routinely charged to clients at this law firm." (O & M's Resp. to Pet. at 18, Ex. 4.) The firm maintains that its expenses for copying and mailing materials to AR & H was "necessary to the litigation since [AR & H] could not have prepared for the mediation without these documents." (*Id.*) In addition to O & M's proposed costs, Motilewa and AR & H have submitted costs of $1,075 and $6,101, respectively. (Bowes' Reply to O & M's Resp. to Pet., Ex. 4 and 5.) Bowes does not contest the costs submitted by either Motilewa or AR & H.

## II. DISCUSSION

### A. Jurisdiction

This Court has diversity jurisdiction over this matter under section 22(a) of the Revised Organic Act of 1954 [3] and 28 U.S.C. § 1332.

### B. Distribution of Attorneys' Fees and Costs

 This Court has the inherent power to regulate attorney-client relations, and thus, to determine the reasonableness of a fee resulting from a contingent fee agreement. *See McKenzie Constr., Inc. v. Maynard,* 758 F.2d 97, 100 (3d Cir.1985) ("[I]n a civil action, a fee may be found to be 'unreasonable' and therefore subject to appropriate reduction by a court . . . .").[4] An

---

**3.** *See* 48 U.S.C. § 1612(a). The complete Revised Organic Act of 1954 is found at 48 U.S.C. §§ 1541–1645 (1995 & Supp.2001), *reprinted in* V.I. CODE ANN. 73–177, Historical Documents, Organic Acts, and U.S. Constitution (1995 & Supp.2001) (preceding V.I. CODE ANN. tit. 1).

**4.** The parties do not address whether Pennsylvania or Virgin Islands law controls the instant case, ·and both cite cases from each

attorney has the burden to prove the reasonableness of his or her fees. *Id.* In reviewing the reasonableness of contingent fees, I am to consider (1) the results obtained, (2) the quality of the work, and (3) whether the attorney's efforts substantially contributed to the result. *Id.* at 101.

■ While I "should be reluctant to disturb contingent fee arrangements freely entered into by knowledgeable and competent parties," I am not to enforce such contingent agreements "on the same basis as ordinary commercial contracts." *Id.* at 101. In unusual circumstances, therefore, I may refuse "to enforce a contractual contingent attorney's fee arrangement because of events arising after the contract's negotiation." *Id.* at 102. One of the significant circumstances in a case such as this is how well counsel performed their contractual obligations. *Id.* at 101. In determining a reasonable fee in a particular case, I will be guided by "whether, as against the client, it [will] result[ ] in such an enrichment at the expense of the client that it offends a court's sense of fundamental fairness and equity." *Id.*

■ I adopt the proposition that an attorney who has effectively been discharged from representing a client in a case, whether by act of the client, or, as here, by court order, is nevertheless entitled to the quantum meruit value of his services. *Cf. Mulholland v. Kerns*, 822 F.Supp. 1161, 1167–68 (E.D.Pa.1993) (finding that, under Pennsylvania law, attorney who was discharged by clients was still entitled to recovery of fees on a quantum meruit basis, even though the parties had agreed to a contingent fee). In *Mulholland*, the court found that counsel "must bear a substantial portion of the responsibility for the personality conflicts and credibility problems which resulted in his inability to get the case settled." *Id.* at 1167. The court concluded that, based on "the work [the attorney] did in the underlying case, the difficulty of the liability issues in the case, the results that he partially achieved, and the responsibility that he bore for delays and additional expenses," the attorney was entitled to the quantum meruit value of his services. *Id.*[5]

■ As an initial matter, neither party disputes that the fee agreement at issue here was freely and knowingly entered into by both parties, and was fair at the time they signed it. I therefore must determine whether circumstances subsequently arose in the conduct of this case which are sufficiently unusual for me to refuse to enforce the terms of the contingent fee as written. I find such circumstances in O & M's conduct in this case. O & M's lawyers flagrantly ignored this Court's orders, misrepresented facts to this Court, and demonstrated a lack of familiarity with this Court's local rules and an appalling lack of knowledge of basic federal practice and procedure. Most disappointingly, O & M's attorneys *continue* to misrepresent facts to this Court by claiming that their fees are to come out of the total settlement amount before costs and expenses are deducted, whereas the agreement clearly states that fees are to

---

jurisdiction. In *McKenzie*, the parties had agreed that Virgin Islands law applied. *See* 758 F.2d at 100. Although I believe Virgin Islands law would apply to an attorney fee growing out of a case litigated in the District Court of the Virgin Islands, I need not decide the issue since the *McKenzie* standard has been applied in cases involving fee disputes in Pennsylvania. *See Ryan v. Butera, Beausang,*

*Cohen, & Brennan,* 193 F.3d 210, 214–18 (3d Cir.1999) (affirming district court's application of *McKenzie* absent Pennsylvania law to the contrary).

5. I did not find, and the parties did not present, caselaw in which an attorney had been discharged by a court, as in this case.

be calculated as a percentage "of the amount recovered by way of settlement, judgment or otherwise, after deduction of costs, disbursements and expenses in the investigation and prosecution of the case." Counsel's assertion that fees are to be deducted from the settlement amount before costs—when the original contingency fee agreement clearly states otherwise— typifies the conduct of O & M's attorneys before this Court. Clearly, the actions of O & M's lawyers, both during their representation of Bowes and now, constitutes "unusual circumstances" that permit me to abrogate the written agreement and reduce O & M's fees.

Moving on to determine the appropriate amount of fees to allocate, I first consider the results obtained in this case. Although Bowes received $325,000 in settlement, this is undoubtedly less, and very probably significantly so, than what she might have obtained if AR & H had been able to mediate on plaintiff's behalf with the "bargaining chip" of her punitive damages claim still in the case.

Second, I must consider the quality of the work performed. Although O & M may have done the bulk of the legal work, the poor quality of that work product actually hurt Bowes' case. As already noted, O & M's lawyers flagrantly ignored the magistrate judge's orders, misrepresented facts to me, demonstrated a lack of familiarity with this Court's local rules, and displayed an appalling lack of knowledge of basic federal practice and procedure. Similarly to the lawyer in *Mulholland,* O & M must bear the responsibility for the problems which resulted in a reduced settlement of Bowes' case.

■ Finally, I recognize that O & M did play a role in the legal work culminating in the ultimate settlement of $325,000, despite the firm's misconduct. O & M lawyers filed the complaint, drafted the plead-ings, took depositions, investigated and prepared the case, dealt with expert witnesses, and conducted much of the discovery. Moreover, Bowes did not discharge O & M after I rescinded their *pro hac vice* status, and allowed attorneys from the firm to continue to work on her behalf. Nevertheless, O & M lawyer's misconduct cost Bowes her punitive damages claim and required AR & H, the newly retained local counsel, to take over the entire conduct plaintiff's case, including the court-sponsored mediation. It was thus AR & H that actually mediated and obtained the settlement on Bowes' behalf, as O & M lawyers' own misconduct had barred them from doing so. Accordingly, as in *Mulholland,* the original firm is entitled to the *quantum meruit* value of their services.

Balancing all these *McKenzie* factors, I find that Bowes' proposed fee distribution is equitable with one modification, and that the legal fees shall be distributed in the following manner.

First, as required by the fee agreement, costs must be deducted from the $325,000 settlement *before* any fees are calculated. With respect to O & M's submitted costs, I agree with Bowes' contention that she should *not* have to pay for any costs related to the transfer of her case from O & M to AR & H. This transfer was, plain and simple, O & M's fault. Accordingly, Bowes is not responsible for the $800 copying fee or the $724 Federal Express charges. Deducting these costs from O & M's submitted total of $51,323, I arrive at $49,799 in costs reimbursable to O & M. AR & H and Motilewa seek $6,101 and $1,075 in costs, respectively, and Bowes has contested neither amount. Accordingly, the total in costs to be deducted from the $325,000 settlement is $56,975.

Deducting these costs from $325,000 leaves Bowes with $268,025 net recovery.

I agree with Bowes that the original contingency fee agreement providing O & M with forty percent (40%) of the recovery, after costs, should be reduced to an overall thirty percent (30%), that is, $80,407 in fees. I further agree with Bowes that this total fee should be divided evenly between AR & H and O & M, with each firm receiving $40,203. Motilewa will then recover fifteen percent (15%) of O & M's fees, or $6,030,[6] leaving O & M with a net fee of $34,173.

## III. CONCLUSION

For the foregoing reasons, I find that the law firm of Ominsky & Messa is not entitled to recover the full percentage fee originally agreed to in its contingency fee contract with the plaintiff and that the fees and costs shall be distributed as follows: The law firm of Ominsky & Messa, P.C., shall receive $49,799 in costs and $34,173 in fees; the firm of Alkon, Rhea & Hart shall receive $6,101 in costs and $40,203 in fees; and Kwame Motilewa shall $1,075 in costs and $6,030 in fees. An appropriate Order follows.

## ORDER

For the reasons stated in the accompanying Memorandum of even date, the fees and costs in this matter will be distributed in the following manner:

The law firm of Ominsky & Messa, P.C. is to receive $49,799 in costs and $34,173 in fees; the firm of Alkon, Rhea & Hart is to receive $6,101 in costs and $40,203 in fees; and Kwame Motilewa is to receive $1,075 in costs and $6,030 in fees.

---

**6.** Because Motilewa ceased to represent Bowes *before* AH & R settled the case, I find that 15% of O & M's recovery is appropriate, rather than the 30% suggested by plaintiff.