Newspaper Guild of Greater Philadelphia *v.*
Philadelphia Daily News, Inc.,
Appellant.

Argued April 29, 1960. Before Jones, C. J., Bell, Jones, Cohen, Bok and Eagen, JJ.

*J. Dress Pannell,* with him *Lawrence D. Biele,* for appellant.

*M. H. Goldstein,* for appellee.

OPINION BY MR. JUSTICE COHEN, October 10, 1960:

This is an appeal from a judgment on the pleadings in favor of the Newspaper Guild of Greater Philadelphia, AFL-CIO (Guild), the representative of certain employees of appellant, by David F. Schick, trustee ad litem. The appellee Guild brought this action in assumpsit seeking to enforce against the appellant Philadelphia Daily News, Inc. (News) an award of an arbitrator under a collective bargaining agreement in effect between the parties for the period from August 1, 1955 to April 30, 1958, and to recover from the News the amount averred to be due and owing under such award. The agreement between appellee Guild and appellant News provided in section VI, entitled "Grievance Procedure", that "any matter arising from the application of this contract or affecting the relations of the Guild or any employee with the Publisher . . . (except the terms of a renewal of, or a modification of, or of a substitute for this contract) not settled to the satisfaction of both" parties within a certain time period, "may be submitted by either party for final and binding arbitration" to one of four listed possible arbitrators who "shall render a decision in writing which shall be final and binding" upon the parties. A special provision dealing with employee wages, Article XVII, provided for an automatic increase in the salaries or minimum weekly salaries for the employees of the News in any of the designated job classifications or in any of the rates within such classifications during the years 1956 and 1957, in the event the Guild and the Philadelphia Inquirer should agree on a subsequent collective bargaining agreement be-

tween themselves for an increase in the salaries of the employees of the Inquirer in the same job classification.

On October 2, 1956, a collective bargaining agreement was entered into by the Guild and the Philadelphia Inquirer providing, effective on June 1, 1957, for certain increases of $2.50 in the minimum rates of salaries of its employees in designated job classifications and for the making of a contribution to a pension fund for Inquirer employees, based upon the time worked by each employee, of the sum of forty cents for each day, not exceeding five days a week, in which each employee covered by the agreement works or a proportionate part thereof. Pursuant to Article XVII of its agreement, the News, beginning June 1, 1957, paid to its employees in the corresponding job classifications an increase in their minimum salaries equal to the increase granted by the Inquirer ($2.50). In addition, however, the Guild took the position that the contribution to the pension fund agreed to between the Inquirer and the Guild was the equivalent of an additional increase in salaries for all the classifications of employees represented by the Guild and accordingly made demand upon the News that it grant to all classifications of its employees covered by their agreement additional salary increases equal to the pension fund contribution agreed to by the Inquirer. The News refused such a demand. After the expiration of the requisite negotiating period, the Guild demanded arbitration pursuant to Article VI of their agreement.

The parties selected by lot from among the four names listed in the agreement an arbitrator to determine the Guild's claim. A hearing was held on the claim at which both the Guild and the News were represented by counsel, presented documentary and oral proofs and filed briefs with the arbitrator. At the

outset of the hearing, the appellant notified the arbitrator that it was appearing specially and without waiver or prejudice to any of its rights and that any participation at the hearing would be with full reservation of the right to interpose objections and take exceptions to any action. The News then took the position that the Inquirer's agreement to make the pension fund contribution as set forth in the Guild-Inquirer contract did not constitute an increase in salaries as the parties used that term in Article XVII of their contract. In justification of this position the News argued that it had not agreed to a pension fund for News employees and that the Inquirer's agreement to pay into the pension fund an amount of money based on the hours worked by each employee could not be equated with a salary increase. The arbitrator's award rejected this contention. The arbitrator held, consistent with a great deal of precedent in this area, that an employer's agreement to compensate employees for labor in the form of payments to a pension fund constitutes an agreement to increase their salaries or wages, even though immediate enjoyment of the monies is deferred. He ruled that the Inquirer's agreement to make pension fund contributions obligated the News, pursuant to Article XVII of its contract, to grant an equivalent salary increase to its employees. The defendant refused to grant the increase called for by the award. Upon the failure of the News to comply with the award, the Guild instituted this action in assumpsit to enforce the award of an arbitrator in a common law arbitration.

The News filed preliminary objections consisting of a demurrer and a motion to strike off the complaint. The demurrer attacked the arbitrator's award as unenforceable by reason of its alleged uncertainty and lack of finality; the alleged absence of a sufficient

agreement between the parties; and the alleged determination by the arbitrator of the dispute in issue which was submitted to him. These preliminary objections were dismissed by the court below which entered an appropriate order allowing appellant leave to file an answer within twenty days. On February 24, 1959, appellant News filed its answer and included therein certain allegations under the caption of "New Matter". These allegations were endorsed with a notice to the Guild to plead responsively. The Guild chose not to reply to the alleged "New Matter", and on May 13, 1959, filed its motion for judgment on the pleadings. Shortly thereafter, the News filed a petition and rule on the Guild to show cause "why appropriate judgment should not be entered by the court of the admission of each of the averments of New Matter." Contemporaneously, the News filed a motion to quash the Guild's motion for judgment on the pleadings. The court below, sitting en banc, unanimously granted the Guild's motion for judgment on the pleadings, discharged the News' rule for "appropriate judgment" and dismissed the News' motion to quash. This appeal followed.

Appellant initially contends that the Guild's motion for judgment on the pleadings, pursuant to Rule 1034, Pa. R. C. P., was prematurely filed before the pleadings were closed.[1] We need spend little time on this contention. The Guild failed to reply to the so-called "New Matter" contained in the appellant's answer within twenty days from the date of service thereof. Since not replied to, the averments of fact

---

[1] "Rule 1034. Motion For Judgment on the Pleadings. (a) After the pleadings are closed, but within such time as not to delay the trial, any party may move for judgment on the pleadings. (b) The court shall enter such judgment or order as shall be proper on the pleadings."

therein must be taken as admitted. Rule 1029, Pa.
R. C. P.; *W. T. Price, Inc. v. Robbins,* 298 Pa. 568,
148 Atl. 849 (1930); 4 Stand. Pa. Pract., The Reply,
§5. Once this is established, the pleadings are closed
(there were at that point no open pleadings to which
to reply) and a motion under Rule 1034 was in order.

Appellant also contends that the Guild is not the
real party in interest, by substantive law, to prosecute
this action to enforce the award of the arbitrator and
to recover judgment thereon. Procedurally Rule 2002-
(b), Pa. R. C. P., provides in relevant part as fol-
lows: "(b) A plaintiff may sue in his own name with-
out joining as plaintiff or use-plaintiff any person
beneficially interested when such plaintiff (1) is act-
ing in a fiduciary or representative capacity, which
capacity is disclosed in the caption and in the plain-
tiff's initial pleading; or (2) is a person with whom
or in whose name a contract has been made for the
benefit of another." It is obvious that the appellee
meets both of these conditions. While Rule 2002 is
merely procedural in scope and works no change in
the substantive law (*Spires et ux. v. Hanover Fire Ins.
Co.,* 364 Pa. 52, 57-58, 70 A. 2d 828 (1950); Goodrich-
Amram §2002(a)-2), the appellee Guild also meets the
test enunciated in the *Spires* case, supra, for constitut-
ing a real party in interest substantively. The Guild
not only has an interest in the result of the action but
also is in such command of the action as to be legally
entitled to give a complete acquittance or discharge
to the other party upon performance. As trustee,[2] rep-
resentative and exclusive bargaining agent for certain
employees of the appellant News, the Guild has the
right to discharge the News' obligation under the col-
lective bargaining agreement to which it is a party.

[2] Cf. *Falsetti v. Local Union No. 2026,* 400 Pa. 145, 161 A. 2d
882 (1960).

In so doing, of course, the Guild must act in a manner consistent with the fiduciary duty it owes to the employees it represents. To hold that the Guild is not a proper party to bring this action would run counter to the reasoning which formed the basis of our decision in *Falsetti v. Local Union No. 2026,* 400 Pa. 145, 161 A. 2d 882 (1960), wherein we held that a union member-employee cannot individually enforce seniority rights governed by a grievance procedure in a collective bargaining agreement even though the provisions relied upon inure directly for the benefit of the employee and make him in effect a third party beneficiary of the agreement. The union here has asserted an interest in the collective contract which is of peculiar concern to it as a labor organization, i.e., the employer's denial of a corresponding wage increase claimed to have been earned as a result of the union's efforts through the collective bargaining process. The strong group interest involved is in procuring for all the employees the benefits promised as well as procuring the promise itself in the collective agreement.[3]

---

[3] In *Association of Westinghouse Salaried Employees v. Westinghouse Electric Corp.,* 348 U. S. 437, 457-58, 75 S. Ct. 489 (1955), Justice FRANKFURTER correctly pointed out that barring the union from suing "would tend to impair the union's power to negotiate a mutually satisfactory settlement. As a practical matter, the employees expect their union not just to secure a collective agreement but more particularly to procure for the individual employees the benefits promised. If the union can secure only the promise and is impotent to procure for the individual employees the promised benefits, then it is bound to lose their support. And if the union cannot ultimately resort to suit, it is encouraged to resort to strike action. . . . A legal rule denying standing to the union to protect individual rights under what is to be deemed a contract with individuals would encourage such indiscipline."

"What the union obtains in the collective agreement it should be entitled to enforce or defend in the forums which have been pro-

Another consideration in this regard is the fact that the Guild is not, in this action, suing to enforce individual wage claims of its members. Rather, it is suing *to enforce an arbitration award* rendered by an arbitrator in a proceeding in which the union and the employer participated, where the award orders a payment of money to individual employees. This serves to distinguish the instant case from *Association of Westinghouse Salaried Employees v. Westinghouse Electric Corp.,* 348 U. S. 437, 75 S. Ct. 489 (1955), cited by appellant News, which stands only for the proposition that §301 of the Labor Management Relations Act of 1947, 61 Stat. 156, 29 U.S.C.A. §185, does not authorize suit *in a federal court* (which is not a court of general jurisdiction) by a union to enforce individual wage claims. Somewhat more apposite to our situation is *United Steelworkers of America v. Enterprise Wheel and Car Corp.,* 363 U. S. 593, 4 L. Ed. 2d 1424 (28 L.W. 4508, June 20, 1960) wherein the Supreme Court clearly affirmed the right of a union to bring suit in a federal court to enforce an arbitration award under a collective bargaining agreement.[4]

It is conceded that this was a common law arbitration proceeding. Since the parties did not follow in any particular the procedure outlined in the Arbitration Act of April 25, 1927, P. L. 381, 5 PS §161 et seq., without any evidence to the contrary, it is mani-

---

vided. When we disallow it that standing, we fail to keep the law abreast of the industrial developments of this age." (Dissenting opinion, 348 U. S. at 467).

[4] This decision was in accord with the prior holdings of the lower federal courts. See, e.g., *Textile Workers Union of America v. Cone Mills Corp.,* 268 F. 2d 920 (4th Cir. 1959), cert. den. 361 U. S. 886; *A. L. Kornman Co. v. Amalgamated Clothing Workers,* 264 F. 2d 733 (6th Cir. 1959), cert. den. 361 U. S. 819; *Local 130, etc. v. Mississippi Valley Electric Co.,* 175 F. Supp. 312 (E.D. La. 1959).

fest that the award of the arbitrators was a common law award. *Freeman v. Ajax Foundry Products, Inc.*, 398 Pa. 457, 159 A. 2d 708 (1960). The defenses available to the News in a proceeding to enforce a common law award are extremely limited. Such an award of arbitrators is conclusive and binding and cannot be attacked unless it can be shown by clear, precise and indubitable evidence that the parties were denied a hearing, or that there was fraud, misconduct, corruption or some other irregularity of this nature on the part of the arbitrators which caused them to render an unjust, inequitable and unconscionable award. Unless they are restricted by the submission, the arbitrators are the final judges of both law and fact and their award will not be disturbed for a mistake of either.[5] Besides being patently erroneous on their face, appellant's contentions (a) that the award is not certain and final, (b) that there are palpable mistakes appearing on the face of the award and the arbitrator's opinion, and (c) that the award was not rendered pursuant to a specific submission and the arbitrator

---

[5] Three very recent cases by the United States Supreme Court take the general view that arbitrators may carry out their duties without interference by federal judges. *United Steelworkers of America v. American Manufacturing Co.*, 363 U. S. 564, 4 L. Ed. 2d 1403 (28 L.W. 4500, June 20, 1960) ; *United Steelworkers of America v. Warrior and Gulf Navigation Company*, 363 U. S. 574, 4 L. Ed. 2d 1409 (28 L.W. 4502, June 20, 1960) ; *United Steelworkers of America v. Enterprise Wheel and Car Corp.*, 363 U. S. 593, 4 L. Ed. 2d 1424 (28 L.W. 4508, June 20, 1960). The two broad rules established by these cases are (a) that the courts should compel arbitration when there is such a provision in a collective bargaining agreement and one of the parties has refused to go to arbitration unless the issue is one which the contract very clearly and explicitly excludes from arbitration, and (b) that an arbitrator's award, based on his construction of the agreement, is final and binding and must be enforced by the courts whether they agree with his construction or not.

unlawfully determined what the dispute and issue were are not defenses available to appellant News in this proceeding. They are all precluded by the common law award.

As to appellant's final contention that the award was beyond the scope of the submission, this too must fall of its own weight. The Guild presented a claim to the News for a salary increase equivalent to the amount which the Inquirer agreed to contribute to a pension fund for Inquirer employees. When the News refused, this raised a question of interpretation of Article XVII of the collective agreement. The dispute was obviously covered by Article VI of the Agreement and the parties proceeded to arbitration pursuant to the submission therein. It requires no discussion to point out that the Guild's demand did not constitute a "renewal," "modification," or "substitute for" the agreement, thereby exempting it from Article VI. On the contrary, it was correctly and properly treated as a "matter arising from the application of this contract" and also one which affected the relations of certain employees with the publisher (News). Considering the breadth of the language used in Article VI, the dispute herein was properly submitted to an arbitrator and a proper award was rendered. See Cox, Reflections Upon Labor Arbitration, 72 Harv. L. Rev. 1482 (1959).

Judgment affirmed.