Joseph V. TOMCZAK, Administrator of the Estate of Walter J. Mish, Deceased, on behalf of the next of kin of Walter J. Mish, Deceased, and Joseph V. Tomczak, Administrator of the Estate of Walter J. Mish, Deceased, on behalf of the Estate of Walter J. Mish, Deceased

v.

ERIE INSURANCE EXCHANGE.

Civ. A. No. 64-972.

United States District Court
W. D. Pennsylvania.

May 18, 1967.

Murray Love, of Wirtzman, Sikov & Love, Pittsburgh, Pa., for plaintiff.

Lisle A. Zehner, Pittsburgh, Pa., for defendant.

## OPINION AND ORDER

MARSH, District Judge.

On June 5, 1964, the plaintiff, Joseph V. Tomczak, administrator of the Estate of Walter J. Mish, deceased, filed suit under the "Innocent Victim Insurance" coverage of an automobile liability policy issued to the plaintiff's decedent, Mish, by the defendant, Erie Insurance Exchange.

The claim under the Innocent Victim Insurance coverage is for $10,000, and the claim under "Expenses for Medical Services and Death Benefit" coverage is $3,000. After the complaint was filed, $2,016 was paid into court, being an undisputed amount due the plaintiff administrator under the Expenses for Medical Services and Death Benefit. In dispute was the liability of defendant to pay the administrator $10,000, plus the remainder of the Expenses for Medical Services and Death Benefit coverage in the sum of $984.[1] The parties stipulated that the amount involved in this litigation is $13,000.[2]

The defendant denied diversity of citizenship. A hearing was held on this issue and from the evidence the court finds that the plaintiff administrator was a citizen of North Carolina at the time suit was filed,[3] and that the defendant was a citizen of Pennsylvania.[4]

Thus diversity and jurisdictional amount exist and the court has jurisdiction of the parties and the subject matter.

In its Answer filed July 15, 1964, the defendant set out five defenses. Its third defense alleged that the defendant, through its attorney-in-fact, Erie Indemnity Company, on June 22, 1964 (12 days after the Complaint had been served), filed a demand for arbitration of any claim that decedent, his estate or next of kin, may have had against the defendant by reason of any claim arising under the policy in suit.[5] The policy provided as a condition precedent to recov-

---

1. See defendant's brief received November 10, 1966, at pp. 1–2.

2. See Pre-Trial Stipulation filed January 26, 1965, item III–b.

3. Transcript of January 3–4, 1967, p. 37.

4. At pretrial conference (Tr., pp. 1, 10), it was stipulated that the real defendant here is Erie Indemnity Company, a Pennsylvania corporation, attorney-in-fact for the subscribers of Erie Insurance Exchange. See also, Transcript of January 3–4, 1967, at pp. 4–5, 7.

5. See also, affidavit of Mr. Love and Exs. B, C, D, and F, attached thereto.

ery that the innocent victim or someone on his behalf shall:

"[I]f the ERIE so elects, submit the claim to be settled by arbitration in accordance with the rules of the American Arbitration Association, and judgment upon the award rendered by the arbitrators may be entered in any court having jurisdiction thereof. The Innocent Victim or surviving kin and the ERIE each agree to consider itself bound and to be bound by any award made by the arbitrators pursuant to this coverage * * *."

The fourth defense, in addition to denying diversity of citizenship, alleges in substance that Mr. Tomczak's appointment as administrator in North Carolina was a nullity; that only the Register of Wills of Beaver County, Pennsylvania, could grant Letters since the decedent was a resident of that county at the time of death. Mr. Tomczak is a brother of decedent's widow who requested him to take out Letters of Administration on the decedent's estate; hence there is no real contention that he has not been acting all along on behalf of the decedent, his estate and next of kin.[6]

In order to satisfy the court [7] and the defendant of plaintiff's right to represent the Mish Estate, the widow on January 3, 1967, in a communication to the Register of Wills of Beaver County, renounced her right to Letters and requested that same be granted to plaintiff. On January 4, 1967, the Register granted Letters of Administration ("Suit Only") to plaintiff.[8]

Previously, on January 9, 1962, the plaintiff had been duly appointed administrator of the Mish Estate by the Clerk of the Superior Court of Craven County, North Carolina.[9] This appointment was regular and proper and cannot be collaterally attacked.

In our opinion plaintiff was at the time of filing this suit and is a proper and legal representative of the Estate of Walter J. Mish, deceased. We hold that he was a proper party to submit the claims of decedent on behalf of his widow and his estate to the defendant, and that he was a proper party to commence this suit in this court.

At the pretrial conference the defendant requested a ruling on the issue of arbitration which it had raised in its Answer.[10] An order was entered that "the above case shall proceed to non-jury trial * * * limited to the issue of arbitration." [11]

Before the trial was held, the parties stipulated to submit the matter to arbitration.[12] But instead of requesting the court to dismiss the action,[13] they sub-

---

6. Transcript of January 3–4, 1967, pp. 22–23.

7. See Pretrial Conference, Tr., pp. 9–10.

8. See documents attached to Stipulation filed January 27, 1967, which were admitted in evidence pursuant to stipulation of counsel. Transcript of January 3–4, 1967, p. 36.

9. Ibid. No fraud was perpetrated upon the Clerk.

10. Pretrial conference, Tr. p. 11. At page 12, the defendant's position was stated as follows: That if the court "should decide this matter is one for arbitration under our contract, *then all the other questions fall by the wayside*." (Emphasis ours.) We agree with defendant's position since an arbitrator decides *all issues of law and fact*. But when defendant opposed the plaintiff's motion to enter judgment on the award, we felt that in addition to the validity of the award, the questions of *jurisdiction and competency* of plaintiff as an administrator should be resolved by the court. However, as to the latter question, it is noted that the defendant failed to defend on this ground before the arbitrator (Transcript of January 3–4, 1967, p. 84), and hence that issue which might have been raised and decided in a former proceeding is res adjudicata under established principles. Cf. Nevling v. Commercial Credit Co., 156 Pa.Super. 31, at 35–36, 39 A.2d 266, at 267. Nonetheless, and perhaps unnecessarily, we find from the evidence produced at the hearing that plaintiff was and is the administrator of the Mish Estate and a proper party to maintain the suit.

11. Order of Court filed February 5, 1965.

12. Stipulation filed February 16, 1965.

13. Cf. Miller v. Allstate Insurance Company, 238 F.Supp. 565 (W.D.Pa.1965).

mitted the following order which the court entered:

"And now, to-wit, this 17th day of February, 1965, it is hereby ordered that the above captioned matter be heard before a duly appointed arbitrator of the American Arbitration Association *who shall finally determine the rights and liabilities of the parties in the above captioned matter,* the hearing to be held at a date mutually agreed upon by the arbitrator and counsel." (Emphasis ours.)

Thus, the parties invoked the power and control of this court. "[W]hen once made the order exists proprio vigore", Zehner v. Lehigh Coal & Navigation Co., 187 Pa. 487, 41 A. 464, 466, and the arbitrator took cognizance of this federal case under the authority of the court. No time limit was fixed for the arbitration hearing; no time limit was fixed for the arbitrator to render his award.

It is to be noted that pursuant to the defendant's prior demand for arbitration, the American Arbitration Association (hereafter AAA) duly appointed Louis L. Manderino, Esq., a Professor of law at Duquesne University, as the arbitrator. Notice of the appointment had been given counsel for both parties on February 1, 1965. On February 4, 1965, Mr. Manderino executed the arbitrator's oath to serve, acknowledging that he was aware of the requirement of impartiality contained in Rule IV of the Accident Claims Tribunal Rules.[14]

Mr. Manderino's appointment as arbitrator was made strictly in accordance with the Accident Claims Tribunal Rules.[15] No valid reason was ever presented by the defendant to the AAA Administrator or to the court advising of its belief that Mr. Manderino should withdraw or be disqualified as arbitrator. Mr. Manderino was called as a witness at the hearing on January 4, 1967, and was subject to cross-examination by the defendant. Nothing was shown to discredit or disqualify him as an impartial arbitrator who had been screened, trained and selected by the AAA. From the evidence, nothing can be inferred to reflect upon his integrity.

The arbitration proceedings were considerably delayed by the parties for one reason or another. When final reply briefs were filed with the AAA Administrator on January 24, 1966, we believe the matter was thoroughly stale. In addition, the arbitrator was absent from his office at that time. Upon his return and finding the briefs in his accumulated mail, and being routinely notified by the AAA Administrator on February 14th that the 30-day period within which to render the award would expire on February 23, 1966, he advised that he needed a two-week extension. If the arbitrator (possibly unaware of the court order) had made his request for an extension to the court, it would have been granted. The AAA Administrator sent prompt and repeated requests for extensions to the parties.[16] Plaintiff consented to all. The defendant refused to consent.

The arbitrator's award was dictated on March 7, 1966 [17] and formally executed on March 9th and filed with the AAA Administrator. The award was in favor of the plaintiff administrator in the sum of $7984, with interest from January 15, 1964.[18]

On September 9, 1966, the Administrator mailed the award to the parties.

14. Transcript of January 3–4, 1967, p. 52. For Rule IV, see affidavit of Mr. Zehner, Ex. 6 attached thereto, Rule IV.

15. Affidavit of Mr. Zehner, Exs. 2 and 6 thereof, the latter being Accident Claims Tribunal Rules. These Rules were sent to counsel for defendant when he objected to the appointment (Ex. 1 of his affidavit).

16. See Exs. G, H, I, J, K, L, M, and N attached to Mr. Love's affidavit.

17. Transcript of January 3–4, 1967, pp. 62, 76–77.

18. See copy attached to Motion for Judgment; transcript of January 3–4, 1967, pp. 62–64.

On October 24, 1966, the plaintiff moved for judgment on the award. Thereafter argument was heard, briefs were filed and the hearing of January 3–4, 1967 was held. We think the motion should be granted.

Jurisdiction having been established, the critical issue is whether the award executed on March 9, 1967 is valid. We think it is.

■ All other issues preliminarily in the case regarding the insurer's right to arbitration and the scope of the Innocent Victim Insurance coverage must be deemed foreclosed since the arbitrator is the final judge of both law and fact and his "award will not be disturbed for a mistake of either." Newspaper Guild, etc. v. Philadelphia Daily News, Inc., 401 Pa. 337, 164 A.2d 215, 220 (1960). Cf. Monte v. Southern Delaware County Authority, 335 F.2d 855, 857 (3d Cir. 1964); Bower v. Eastern Airlines, 214 F.2d 623, 625 (3d Cir. 1954).

■ The defendant contends that the award is invalid because rendered after the 30-day period provided by Rule VII of the Accident Claims Tribunal Rules.[19] Although defendant does not cite any authority in his brief, we are aware that there are older authorities on common law arbitration declaring untimely awards invalid. However, in the circumstances of this case we do not think they are controlling and that Rule VII is merely directory and was superseded by the order of the court.

In the first place the considerable time and effort expended which culminated in the award should not be for naught except for compelling reasons. There are none. It was at the instance of the defendant that the agreement to arbitrate was enforced by the order for arbitration which directed the arbitrator to "finally determine" the issues. The arbitration proceedings were pursued under the auspices of the court. The defendant's refusal to consent to a two-week extension of time was not based on any good reason. After successfully overcoming the plaintiff's opposition to arbitration, and after considerable expenditure of time and effort, it advances a superficial technicality to avoid the result.

At the hearing at which the court required the attendance of the arbitrator, there was not so much as a whisper that his appointment had not been made according to the rules of the AAA; there was no suggestion that he was not qualified. It was shown that the slight delay was excusable. No evidence was produced showing fraud, misconduct, corruption or any irregular conduct which resulted in an unjust, inequitable and unconscionable award. Wingate Construction Co. v. Schweizer Dipple, Inc., 419 Pa. 74, 213 A.2d 275 (1965), a case involving common law AAA arbitration; Newspaper Guild, etc. v. Philadelphia Daily News, Inc., supra, 164 A.2d at p. 220.

■ If the two-week delay is deemed an irregularity, it was de minimus, and to accede to defendant's demand to return the case to the AAA for another arbitration proceeding would visit a harsh and unwarranted penalty upon the plaintiff who was not in any way to blame. Damon v. Berger, 191 Pa.Super. 165, 155 A.2d 388 (1959); Kuzemchak v. Bukofski, 2 Pa.Dist. & Co.R.2d 810 (1955). Arbitration is now favored in several important areas. Cf. Miller v. Allstate Insurance Company, 238 F.Supp. 565 (W.D.Pa.1965). It is our opinion that the Pennsylvania courts would enter judgment on the award which constitutes the final step in a court-ordered arbitration proceeding agreed upon by the par-

---

19. The Accident Claims Tribunal Rules, Rule VII, § 32, provides:
"Time—The Arbitrator shall render his Award promptly and, unless otherwise agreed by the parties, or specified by law, not later than thirty days from the date of the close of the hearings, or if oral hearings have been waived, from the date of transmitting the final statements and proofs to the Arbitrator."

ties and insisted upon by the defendant. We will not sustain the defendant's hypertechnical objection except at the command of our superiors.

An appropriate order will be entered.