**Levit v. Kutcher**

*Natalie Finkelman* and *Peter S. Greenberg,* for plaintiff.
*Herbert R. Weiman,* for defendant.

GOLDMAN, *J.,* January 25, 1996—Defendant Susan Kutcher, pro se, appeals this court's denial of her post-trial motions. The case arises out of a breach of contract action between defendant Kutcher and plaintiff Saul Levit, Esquire. Plaintiff Levit initiated this suit in August 1990, in which he alleged that Kutcher had failed to pay the legal fees due to him and his firm Schnader, Harrison, Segal and Lewis for services that he and his colleagues in the family law section of the firm rendered to Ms. Kutcher in her litigation against her ex-husband to win a modification of their child custody agreement: she sought to move with their two children

from Philadelphia to Aspen, Colorado. Plaintiff Levit claimed that he and his department had worked on the custody relocation case for Ms. Kutcher from the time she first discussed the case with him in September 1989 until she fired him in February 1990, and that she owed him $13,798.20 in attorney fees and costs. Kutcher contended that she owed nothing. A non-jury trial was held on December 22, 1993 before the (late) Honorable Calvin T. Wilson. At trial, defendant based her case on three arguments: (1) that no written fee agreement existed between herself and Levit, (2) that the work performed was unsatisfactory since Levit assigned her case to a second year associate with no custody trial experience, (3) and that Levit was not entitled to sue in the first place, since the Schnader firm was the real party in interest in the case, and the fees directly traceable to Levit in the custody case amounted to only a few hundred dollars—the rest was attributable to work done by others in the firm. At the close of plaintiff's case, defendant Kutcher moved to dismiss on the basis that Saul Levit was the only named party in interest, and that Kutcher had previously paid to the firm amounts in excess of the few hundred dollars directly attributable to his part of the custody work. Plaintiff Levit responded that he was, in fact, suing to recover fees owed to the firm as a whole, including fees owed to him, and that he would offer to amend the caption to reflect the inclusion of Schnader, Harrison as plaintiff. The judge denied Kutcher's motion to dismiss. At the close of defendant's case, the court requested both sides to submit memoranda of law within 15 days. On January 11, 1994, Judge Wilson entered a verdict in favor of plaintiff Levit in the amount of $13,798.20.

## I.

Verdict-loser defendant Kutcher submitted motions for post-trial relief, assigned for disposition to this court,

because of the death of the honorable trial judge.[1] The court denied defendant's motions in an order dated December 11, 1995. In her memorandum in support of her motion for post-trial relief, she asked "that this court reconsider its verdict and enter a finding for the defendant and against the plaintiff." The wording, although admittedly vague, sounds like a post-trial motion for judgment n.o.v. Consequently, this court applied the well-settled standard that is set forth by the Supreme Court thus:

"In reviewing a motion for judgment n.o.v., 'the evidence must be considered in the light most favorable to the verdict winner, and he must be given the benefit of every reasonable inference of fact arising therefrom,

---

1. First, however, Kutcher filed an appeal with the Superior Court, which was quashed as premature, since no post-trial motions had been decided, and no final judgment entered (order of Superior Court, no. 548 Philadelphia, June, 1994). Levit points out that Kutcher further attempted to delay his recovery of the verdict amount by flouting Philadelphia Rules of Civil Procedure *227.1(D) and (E) by (1) failing to notify the post-trial motions clerk in writing as soon as she received the notes of testimony and (2) failing to submit a brief within 30 days of receipt of a briefing schedule, sent on September 20, 1995. Although Levit asks this court to dismiss Kutcher's post-trial motion with prejudice based on this allegedly dilatory behavior, he alternatively requests the court to dismiss based on the substantive legal arguments discussed *infra.* Plaintiff's memorandum of law in opposition to defendant's motion for post-trial relief at 2, 6. We decline to dismiss this action for failure to comply with the local rule cited, in accordance with Pa.R.C.P. 239(f) which specifically prohibits the dismissal of any action or proceeding "for failure to comply with a local rule other than one promulgated under Rule of Judicial Administration 1901." Dismissal of post-trial motions for failure to file a brief within the time required by the local rule is thus precluded under Rule 239(f). See *Schulz v. Celotex Corp.,* 447 Pa. Super. 391, 669 A.2d 404 (1996). Our decision, therefore, is based upon the substantive legal merits of the case.

and any conflict in the evidence must be resolved in his favor.' . . . Moreover, [a] judgment n.o.v. should only be entered in a clear case and any doubts must be resolved in favor of the verdict winner. . . .

"There are two bases upon which a judgment n.o.v. can be entered: one, the movant is entitled to judgment as a matter of law . . . and/or two, the evidence was such that no two reasonable minds could disagree that the outcome should have been rendered in favor of the movant. . . . With the first a court reviews the record and concludes that even with all factual inferences decided adverse to the movant the law nonetheless requires a verdict in his favor, whereas with the second the court reviews the evidentiary record and concludes that the evidence was such that a verdict for the movant was beyond peradventure." *Moure v. Raeuchle,* 529 Pa. 394, 402-403, 604 A.2d 1003, 1007 (1992). (citations omitted)

Although defendant's brief made no mention of request for new trial, her motion itself did ask for a new trial as an alternative basis of relief to judgment n.o.v. In accordance with Pa.R.C.P. 227.1(e), this court "shall dispose of both requests."

The standard for granting a new trial is set forth in *Burrell v. Philadelphia Electric Company,* 438 Pa. 286, 289, 265 A.2d 516, 518 (1970). A new trial shall be granted on the grounds that the verdict is against the weight of the evidence "only when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail."

For the identical reasons, discussed at length below, we denied defendant Kutcher's motion for judgment n.o.v. as well as defendant's request for a new trial.

We determined that the evidence sufficiently supported the trial judge's decision for plaintiff so that one's sense of justice remains intact.

## II.

Movant defendant Kutcher raises these issues in her post-trial motions: (1) no written valid attorney-client agreement existed, thus there was no payment due, since no breach of contract; (2) Levit provided an unsatisfactory level of work, thus no money is due him; and (3) Schnader, Harrison and not Levit is the real party in interest, thus Levit had no standing to prosecute the suit. Each is devoid of merit.

## III.

Defendant contends, first, that no valid contract was executed between plaintiff and defendant: thus she owes nothing to Levit.

## A.

As a threshold contention defendant Kutcher argues that plaintiff Levit's claim for payment of his legal fees is barred by the statute of frauds, 33 Pa.C.S. §1, and by Pa. Rules of Professional Conduct 1.5(b) and comment thereto. Kutcher contends that the statute of frauds requires a written agreement between client and lawyer, and, alternatively, that Pa.R.C.P. 1.5(b) applies here, requiring a written fee agreement "when the lawyer has not regularly represented the client." She argues that although Levit knew her and represented her in her earlier divorce litigation, his representation of her in the child custody issue involving her desired move to Colorado was *new* representation, requiring a written agreement setting forth precisely the details of the fees

and identity of the lawyers who would work on her case. She claims that since she never signed a formal contract, setting forth fees, she owes nothing, and the court wrongly ignored her defense in this regard.

We find, however, that defendant's reliance upon either the statute of frauds or Rule 1.5, Pa.R.P.C. are equally misplaced. First, she cites no provision in the statute of frauds to support her claims. And for good reason: The statute of frauds does not apply to service agreements such as the one between attorney and client. See 33 P.S. §1 et seq. The statute applies to agreements regarding interests in real estate, and promises to answer for the debts of another. *Id.* Thus, the statute renders oral contracts for the sale of real estate unenforceable, although not invalid. *Hostetter v. Hoover,* 378 Pa. Super. 1, 7, 547 A.2d 1247, 1250 (1988), *appeal denied,* 523 Pa. 642, 565 A.2d 1167 (1989). Service contracts, *including fee arrangements between lawyer and client,* are not contemplated within the ambit of the statute of frauds. Further, it is notable that even where a writing is technically required under the statute, sufficient part performance, as occurred in the instant case, is evidence that will take a contract out of the statute. *Eastgate Enterprises Inc. v. Bank and Trust Co. of Old York Road,* 236 Pa. Super. 503, 345 A.2d 279 (1975). Thus, any arguments based upon the statute of frauds merit no further discussion or consideration.

We do, however, consider defendant Kutcher's allegation that a formal written agreement is mandated by Pa.R.P.C. 1.5(b) and comment thereto, which states in pertinent part:

"When the lawyer has not regularly represented the client, the basis or rate of the fee shall be communicated to the client, in writing, before or within a reasonable

time after commencing the representation." Pa.R.P.C. 1.5(b)

"In a new client-lawyer relationship, however, an understanding as to the fee should be promptly established. . . . A written statement concerning the fee reduces the possibility of misunderstanding. Furnishing the client with a simple memorandum or a copy of the lawyer's customary fee schedule is sufficient if the basis or rate of the fee is set forth." Comment to Pa.R.P.C. 1.5 (Fees).

Defendant's reliance on Rule 1.5(b) is misplaced, for the following reasons:

Preliminarily, we note that the rules in the Code of Professional Responsibility are "not mandatory laws," rather, the rules regulating fees, like other rules in the code, represent "ethical considerations [which] are aspirational in character and represent the objectives toward which every member of the profession should strive." *Eckell v. Wilson,* 409 Pa. Super. 132, 137 n.3, 597 A.2d 696, 698 n.3 (1991), *appeal denied,* 530 Pa. 643, 607 A.2d 253 (1992). But even if we agree arguendo that the terms of Rule 1.5(b) are binding, the question of whether Levit's taking on the representation of Kutcher's custody relocation suit was "new" representation was hotly disputed at trial. Levit presented a letter (Trial ex. P-1) from him to Kutcher, dated February 27, 1989, setting up an appointment to meet in March "with respect to my firm getting back involved in your representation with Mason (another Schnader, Harrison family law attorney who had worked on Kutcher's divorce) and me being the lead counsel." N.T. at 13. Once defendant Kutcher returned to Schnader, Levit worked on divorce matters with Kutcher, and then, in October, 1989, he undertook her custody matter, evidenced by a letter. Thus, there was

sufficient evidence to refute defendant's claim that this was "new" representation within the ambit of Rule 1.5(b), even if the rule had the force of law. But even if, arguendo, this was a new representation, we find sufficient evidence in the record to satisfy us that the basis of the fee was communicated by plaintiff to his client Kutcher. Levit testified that he explained to Kutcher the firm's billing procedures at length, that she had past experiences with the firm and lawyers associated with the firm, and that she asked for and received detailed billing statements each month in addition to the regular monthly bill. These detailed bills indicated the hourly rate charged by Levit and other associates handling the case. Evidence at trial thus satisfies the court that Levit satisfactorily conveyed to Kutcher within a reasonable time after commencing representation an "understanding as to the fee" charged by his firm for the relevant representation as recommended (not, however, mandated) by the comment to Rule 1.5.

Moreover, in insisting that a writing was required here, Kutcher apparently confuses her case with a contingency arrangement. Pa.R.P.C. 1.5 requires that "a contingent fee agreement shall be in writing." The Kutcher-Levit agreement was *not* a contingent fee: thus, no writing was required. "[A]n agreement based upon the reasonable value of the services provided by a lawyer" was held *not* to be a contingency fee. *Eckell v. Wilson, supra* at 140, 597 A.2d at 700. To meet the definition of a contingency fee, the fee agreement between attorney and client must be "directly related by percentage or formula to the amount recovered or protected." *Id.* at 141, 597 A.2d at 700. Further, it must meet the "generally accepted twofold purpose of a contingent fee:" the parties cannot afford to retain the serv-

ices of counsel on a fixed or hourly rate and successful resolution of the claim produces a *res* out of which the fee is paid. *Id.* In contrast, an "agreement [like the one sub judice] which fixes a final fee based on the value of services rendered . . . is a proper method of fixing a fee and is not a contingent fee in its commonly used meaning." *Id.* Thus, no writing is required here. Further, the court notes that this finding is consistent with Rule 1.5(d) which advises that contingency fees are inappropriate when lawyers represent clients in family law matters. Accordingly, defendant Kutcher's post-trial motions on this issue were denied.

### B.

Defendant Kutcher further argues that no valid agreement existed between herself and Levit, because they reached no formal understanding regarding the nature of the fees and services to be rendered. At trial, she claimed that Levit and she agreed only to a $5,000 flat fee for his services in the custody matter. He disputed this, stating that he never charges flat fees in his practice, and that she agreed to a $2,500 initial retainer and monthly billings thereafter. Kutcher denied this. Further, she contended that she was ultimately represented in the custody matter by second-year Schnader associate Carolyn Zack rather than by Levit himself, contrary to any such agreement on her part. Levit and Zack testified that Kutcher, although aware of Zack's relative inexperience, specifically requested the services of Zack, because they carried a lower hourly price tag and because Kutcher "hit it off" with Zack after their initial meeting.

Our review of the record shows that a series of conversations and supporting letters and detailed bills signed and sent by Levit and Zack to Kutcher before

and during the custody representation constitute adequate evidence of an agreement between them, which triggered Levit's and Zack's active representation of this client. *Hershey Foods Corp. v. Ralph Chapek Inc.,* 828 F.2d 989, 995 n.5 (3d Cir. 1987) (applying Pennsylvania law) (correspondence may constitute a contract where parties act upon the terms therein). Trial exhibit P-7, for example, was a letter, dated October 13, 1989, from associate attorney Zack to Kutcher in which she explained that she "could not continue with the custody representation unless she (Kutcher) paid a $2,500 retainer, specifically for that case." N.T. at 73. Since the trial judge found evidence of a valid contract existing between the parties, the effect is that Kutcher's version of the terms of the agreement which differ from the terms set out in the letters and bills, are in the nature of parol evidence, which were arguably inadmissible at trial. Certainly Kutcher's allegations cannot now be used to defeat the trial judge's obvious acceptance of Levit's version of the facts surrounding the terms of the agreement.

The modern Pennsylvania parol evidence rule is this: "[w]here parties, without any fraud or mistake, have deliberately put their [agreements] in writing, *the law declares the writing to be not only the best, but the only evidence* of their agreement." *Keyser v. Margolis,* 422 Pa. 553, 559, 223 A.2d 13, 16 (1966). (emphasis in original) All preliminary negotiations, conversations, and verbal agreements are merged in and superseded by the subsequent written contract. "[U]nless fraud, accident or mistake be averred, *the writing* constitutes the agreement between the parties, *and its terms cannot be added to or subtracted from by parol evidence."* *Id.* (emphasis in original) In *Keyser,* the court held that where voluminous correspondence existed setting forth

terms of employment, including compensation of plaintiff, the plaintiff could not vary the terms by giving oral testimony that he was also allegedly promised a share of profits. *See also Hershey Foods Corp. v. Ralph Chapek Inc., supra* (interpreting Pennsylvania law). *Hershey Foods* instructs that correspondence may constitute a contract and it is not necessary for both parties to sign the writing if the parties, acting pursuant to its terms, evidence their acceptance. *Id.* at 995 n.5.

Kutcher, the only defense witness at trial, disputed various terms of her agreement with Levit. She testified that she was led to believe that Ms. Zack had previous custody trial experience. She stated that Levit told her the custody case would be a "piece of cake" that he could successfully tackle for a "flat fee of $5,000" and denies ever being asked for a $2,500 retainer. N.T. at 139. The evidence, as represented by the letters which memorialize underlying conversations, and other evidence presented by Levit, convincingly indicate that a retainer was indeed requested, not a flat fee, that monthly bills would be mailed, and that no promises were made that Levit alone would represent Kutcher. See N.T. at 21, re trial ex. P-4 (letter referring to phone conversation between Kutcher and Levit in which $2,500 retainer was mentioned as well as possibility of Ms. Zack representing Kutcher). See N.T. at 27, re ex. P-6 (Detailed billing report, October 1989 to April 1990, setting forth time and fees billed, sent by Levit, received by Kutcher). See also, N.T. at 141, Trial ex. P-9 (Kutcher's check to Schnader firm for $5,315.81, which Levit's counsel calculates with precision to include the disputed $2,500 retainer fee).

The version of terms offered by Kutcher was, thus, arguably inadmissible at trial since it clearly contradicted the terms set out in an agreement. Oral testimony is

inadmissible to contradict writings, if the writing and oral agreement relate to the same subject matter. *Hershey Foods, supra* at 995. The court's task is first to determine whether the correspondence is the "final and complete expression of the parties' agreement." *Id.* This determination is a matter of law to be decided by the court rather than a jury. *Id.* If both the principal and allegedly subsidiary agreements relate to the same subject matter and are so interrelated that both would normally be included in a single contract, then any subsidiary matters are merged into the main agreement. In *Hershey,* Chapek, president of a marketing firm, met with a Hershey representative on October 27, 1981, to discuss Chapek's proposal to market certain Hershey products. They discussed Chapek's proposed services and compensation. On October 30, Chapek wrote to the Hershey representative and referred to the October 27 meeting. The dispute arose because Hershey claimed that the October 30 letter was the integrated agreement, while Chapek claimed that the letter was only a partial agreement and claimed that he was owed commissions. The Third Circuit upheld the lower court ruling that the October 30 written letter was the only valid agreement between the parties, not to be varied by oral testimony. The court found a contract because both parties agreed that the October 30 letter was written by Chapek, received by Hershey and acted upon in accordance with its terms. *Id.* at 994. Further, any subsequent conversations between Hershey and Chapek regarding their arrangement was barred since "no case in Pennsylvania has ever gone so far as to permit the terms of a written contract to be altered or varied by such testimony [of subsequent events]." *Id.* at 998.

Here, Levit testified that he signed each letter, mailed it to Kutcher, never got any back, and both acted upon

the terms in the letters. Thus, as in *Hershey,* a valid oral contract or implied-in-fact contract, at the very least, was formed between the parties, not to be altered by parol evidence that attempts to vary the terms.

## C.

Finally, regarding the validity-of-the-contract issue, even if we were to agree with defendant that a primary question here is whether or not a contract existed between the parties, it is not for this court to disturb the fact-finder's determination that plaintiff was owed $13,798.20 plus interest based upon the apparent terms of their agreement. Kutcher essentially argues that there was no "meeting of the minds" regarding the nature of the fee arrangements and whether Schnader lawyers other than Levit could represent her. N.T. at 136. While it is true that each side offered a different view of the terms of the agreement, nevertheless, it is well established that "[w]here the facts are in dispute, the question of whether a contract was formed is for the jury to decide." *Ingrassia Construction Company Inc. v. Walsh,* 337 Pa. Super. 58, 66, 486 A.2d 478, 482 (1984).

## D.

Alternatively, Kutcher contends that even if Levit is owed fees, he is owed only a fraction of the $13,798.20 verdict, *i.e.* the "quite minimal charges" directly attributable to his work, not the work assigned to Ms. Zack or others. In essence, Kutcher appears to agree to recompense Levit on a quantum meruit theory of restitution. But this theory is not acceptable as an alternative, since a quantum meruit theory is inconsistent with the court's apparent finding that a valid contract

did exist, resulting in the court's $13,798.20 verdict award in favor of plaintiff.

In Pennsylvania, "the quasi-contractual doctrine of unjust enrichment (quantum meruit) [is] inapplicable when the relationship between the parties is founded on a written agreement or express contract." *Hershey Foods, supra* at 999. Quantum meruit occurs in the *absence* of an agreement, whether express or implied, whenever one person receives unjust enrichment. *Id.* But, where the contract "fixes the value of the services involved there can be no recovery under a quantum meruit theory." *Id.* See also, *Murphy v. Haws & Burke,* 235 Pa. Super. 484, 489, 344 A.2d 543, 546 (1975) (where oral, implicit compensation agreement existed between attorneys and law firm, no separate quantum meruit recovery could be obtained). As discussed earlier, evidence at trial supported finding of an agreement, so as to preclude application of a quantum meruit theory of restitution here. Rather, the verdict based upon a contract theory awarding the full $13,798.20 amount of Schnader's representation of Kutcher's custody case should stand, and defendant Kutcher's post-trial motions fail.

## IV.

Defendant's second main contention is that the fees charged by plaintiff Levit were improper and unreasonable. Her claims appear to be based on the fact that she ultimately lost the custody suit (although her husband later turned the children over to her and she now lives with them in Gladwynne). She claims that it was not the loss of the suit, but rather the ongoing neglect that she suffered at the hands of Levit and Schnader that prompted her to fire Levit and to refuse to pay fees owed. Specifically, she charges that Levit

was not personally available to attend repeatedly re-scheduled custody conferences in Montgomery County and sent the inexperienced Ms. Zack in his stead. She charges that Zack failed adequately to research the relevant new case law regarding a mother's loss of custody upon relocation, and that Zack failed to prepare her for questions that she was asked by her ex-husband's counsel at the hearing, thereby causing Kutcher to lose custody of her two minor children as a result of the hearing. She claims that she fired the firm in February, although the custody decision was not handed down until March. Thus, she says that this is not a case of being unhappy with the results and not paying, but rather, a case of overcharge by a law firm in relation to the services actually performed. The trial court apparently found that the charges did constitute appropriate fees for services rendered. That ruling is neither unreasonable nor contrary to law.

Pa.R.P.C. 1.5(a) sets forth factors to be considered in determining the propriety of a fee. Even in the absence of a special agreement, an attorney is entitled to be paid the reasonable value of his services, which include factors like the labor and time involved, the character of the services rendered, the skill and standing of the attorney, and the ability of the client to pay. *Ridder Brothers Inc. v. Strassburger,* 154 Pa. Super. 524, 526, 36 A.2d 191, 192 (1944). See also, *LaRocca Estate,* 431 Pa. 542, 246 A.2d 337 (1968). "There is no presumption that an attorney has been guilty of a want of care, arising merely from a bad result. To the contrary an attorney is presumed to have discharged the duties of his representation until the opposite has been made to appear." *Mazer v. Security Insurance Group,* 368 F. Supp. 418, 422 (E.D. Pa. 1973), *aff'd,* 507 F.2d 1338 (3rd Cir. 1975). Moreover, even if no contract

is found to exist, an attorney who is terminated for reasons other than wrongful acts—*i.e.* illegal or immoral acts—is entitled to quantum meruit recovery. The mere fact that termination is deemed by the client to be for just cause, does not warrant denial of recovery by the lawyer, although it may impact on the amount of his recovery. *Mulholland v. Kerns,* 822 F. Supp. 1161 (E.D. Pa. 1993). As long as the court adheres to standards for determining reasonable attorney fees, it may calculate the attorney's quantum meruit recovery of fees in whatever way seems most reasonable, given all the circumstances of the case before it. *Id.*

Ms. Zack, who worked directly on the custody litigation on behalf of defendant Kutcher, described at trial the nature of the work she performed on behalf of her client:

"After her ex-husband filed a petition with the court to preclude her from leaving the state, petition for writ of ne exeat, we were called to an emergency conference on that petition, and Ms. Kutcher was required, in order to pursue her relocation request, [to file (sic)] a petition for modification, so I represented her in connection with that period and other related matters.

"Ms. Kutcher was very anxious to leave the jurisdiction, and all of the litigation took place between September and December of 1989, after which our representation concluded.

"We had three days of hearings between September and December of 1989. [To prepare for these hearings] I met on several occasions with the client, I met on one or more occasion with her children. I was on the telephone with her regularly, at least once or twice a week; corresponded with her and with opposing counsel regularly; prepared extensive lists of cross-examination questions; opening and closing statements; and

also pre-trial memorandum, summarizing our position.
. . . [Ms. Kutcher] was well aware of what I was doing,
because we had such frequent contact." N.T. at 74-75.

Moreover, Ms. Zack consulted regularly with Mr.
Levit, a recognized expert in the field of family law.

Defendant's reliance on the case *Lampl v. Latkanich,*
210 Pa. Super. 83, 231 A.2d 890 (1967) is misplaced.
*Lampl* merely stands for the proposition that an attorney
may sue under, alternatively, either a contract or quan-
tum meruit theory to recover the reasonable value of
his services when a client terminates his relationship
with an attorney, unless an attorney is discharged be-
cause of his own wrongful acts. The type of wrongful
acts involved are those that are immoral or illegal, far
different from a claim of malpractice. Even then, there
is no presumption that an attorney has been guilty of
a want of care arising merely from a bad result. *Gans
v. Mundy,* 762 F.2d 338, 341 (3d Cir. 1985), *cert. denied,*
474 U.S. 1010 (1985).

Kutcher's grievance against Levit is described by
her counsel as "the clearest example of a client being
unhappy with the performance of her counsel and the
quality of services rendered, because her firing of them
occurs before there is any [adverse] ruling in the case,
but after they have already performed." N.T. at 7. How-
ever, in the instant case before Judge Wilson, Kutcher
never made any explicit allegation of negligence, and,
a fortiori, no allegation of illegal or immoral conduct
against attorneys Levit, Zack or their firm. Moreover,
Kutcher admitted that she could *not* substantiate one
of her bitterest complaints against Levit: that his un-
availability to attend several custody conferences was
the reason the family court had to postpone them, and
the reason why the inexperienced associate Zack was
substituted. N.T. at 127-128.

Moreover, although defendant repeatedly emphasized that she fired Levit long before she knew she would lose her custody case, the record reflects a dispute on this issue. Levit testified that he thinks that he was fired when "the [custody] trial was over, I just think the decision hadn't come down." N.T. at 64. Levit's testimony was that he presumes that he was fired because "I think Susan Kutcher didn't like the way the [custody] trial went, and I think that's part of why she fired us." N.T. at 65. Nothing in the record supports Kutcher's claim that she did not fire Levit because of "sour grapes" over the bad result of her custody relocation suit. As discussed above, a bad result alone does not justify non-payment of legal bills. See *Mazer v. Security Insurance Group, supra* at 422 (an informed judgment on the part of counsel, even if subsequently proven to be erroneous, is not negligence).

In short, there was sufficient evidence for the court to find that Levit and Schnader's performance was reasonable on behalf of defendant Kutcher, supporting the verdict granting $13,798.20 for their billed services, and defendant's post-trial motions on that issue were rejected.

## V.

Defendant Kutcher's third major contention is that Levit was not the "real party in interest" in the suit; rather, the law firm, Schnader, Harrison, Segal & Lewis should have been named as the plaintiff. In the absence of his firm as a party, Kutcher should only be liable for the fees directly attributable to Levit's work on her case, a sum of a few hundred dollars. Defendant raised this issue, in a motion to dismiss at the close of plaintiff's case; the judge denied the motion. The contention is rejected by this court post-trial as well.

The basis of defendant's claim is Pa.R.C.P. 2002, prosecution of actions by real parties in interest. The rule requires that, except for enumerated exceptions, "all actions shall be prosecuted by and in the name of the real party in interest, without distinction between contracts under seal and parol contracts." Pa.R.C.P. 2002(a).

While it is true that plaintiff Levit apparently sued in his own name, without joining the Schnader firm as a co-plaintiff, it appears that the exceptions enumerated in Rule 2002 apply to this case, thus excusing the failure to name Schnader. Rule 2002(b)(1) and (2) states that a "plaintiff can sue in his own name when he is acting in a fiduciary or representative capacity which capacity is disclosed in the caption and in the plaintiff's initial pleading; or is a person with whom or in whose name a contract has been made for the benefit of another."

Here the record is clear that Schnader was disclosed in the initial pleading as at least an implicit party. Further, it is clear that Kutcher hired and expected to pay Schnader, not Levit personally. Levit testified thus at trial that "sometimes checks were made payable [by Kutcher] to Schnader, it's always Schnader's bill, sometimes checks were made payable to Saul Levit and I would endorse it to the firm." N.T. at 66. He further testified that Kutcher had formerly been represented by Schnader, Harrison and was familiar with their billing practices.

Further, plaintiff Levit meets the established definition of a real party in interest, generally defined to be "a person so situated with reference to a particular cause of action that the person has the power to discharge the cause of action and to control the proceedings brought to enforce it. To be the real party in interest,

then, one must not merely have an interest in the result of the action, but must be in such command of the action as to be legally entitled to give a complete acquittance or discharge to the other party upon performance." Standard Pa. Practice 2d §14:23. Saul Levit, as the billing partner throughout his firm's representation of Kutcher in her custody battle, fits the definition: he is suing to recover for bills of the Schnader firm, including bills owed to him.

But, more fundamentally, the real party in interest rule fails for movant because the objection "cannot usually be raised for the first time, absent special circumstances, at the trial of the action; after judgment, upon appeal; or by a collateral attack upon the judgment in the original action." *Id.* at §14:29. However, "the failure to join a real party in interest that is an indispensable party may be raised by a preliminary objection, answer, or motion for judgment on the pleadings, and at trial it may be raised by a motion to dismiss, since the failure to join an indispensable party is a nonwaivable defense." *Id.* at §14:29.

As discussed earlier, defendant *did* raise the defense at trial in a motion to dismiss, and the motion was denied by Judge Wilson. Further, at trial, Levit's counsel argued that "Mr. Weiman (Kutcher's counsel) did not object to the complaint (naming Levit as sole plaintiff) in any way, there were no preliminary objections asserting lack of capacity to join or non-joinder of necessary parties, that was never raised before, there was no new matter on that issue." N.T. at 92. Plaintiff Levit also moved to amend the caption of the complaint to add Schnader, Harrison as additional plaintiffs. N.T. at 93.

Regarding this issue, we note that the rule is "procedural in scope, and does not affect the existing sub-

stantive law as to who is a real party in interest." Standard Pa. Practice 2d §14:25. See also, *Newspaper Guild of Greater Philadelphia v. Philadelphia Daily News Inc.,* 401 Pa. 337, 164 A.2d 215 (1960) (plaintiff Guild meets test for real party in interest entitled to prosecute case against newspaper in name of newspaper employees since as trustee, and bargaining agent for the employees, the Guild has an interest in the action and can completely discharge the adverse party upon performance).

At trial, plaintiff Levit moved to amend the caption of the complaint to add Schnader, Harrison, Segal and Lewis, as additional plaintiffs, pursuant to Rule 1033 of the Rules of Civil Procedure, which provides that amendments, including caption changes, can be made at any time through trial. Although the trial court did not rule on plaintiff's oral motion to amend the caption, this court notes that Pa.R.C.P. 126 favors a liberal amendment policy by courts of technicalities where no prejudice or unfair surprise to other party can be shown. Since it is clear that Kutcher was aware that Schnader was at all times the billing firm, and that Levit was a major partner in the family law practice of that firm, there is no surprise or prejudice attached to earlier discovery in allowing Levit to amend the caption at this date to include the firm itself.

## VI.

Additional contentions that defendant enumerated in her post-trial motion, that were not discussed further in the supporting brief, were denied as follows:

(1) The verdict is contrary to the weight of the evidence concerning costs and fees incurred by defendant in her attempt to *correct* the results of plaintiff's (faulty) representation.

The record discloses that at trial, defendant's counsel, Mr. Weiman, questioned his client regarding the lawyers she hired after firing plaintiff Levit and his firm.

"Mr. Weiman: Your Honor, I intend to ask Ms. Kutcher to testify as to what additional attorney fees and expenses she was put to as a result of poor representation that she received from Saul Levit et al." N.T. 113-117.

Weiman then submitted exhibits of checks paid by Kutcher to various attorneys. Counsel for plaintiff vigorously objected that the line of questioning and related exhibits were irrelevant, pointing out that this evidence had been previously introduced in defendant's earlier malpractice action against Schnader, an action that had been ordered dismissed by Judge Manfredi who also later denied defendant's motion for reconsideration of the dismissal.

Judge Wilson appeared to allow defendant's lawyer to admit the evidence of checks paid to other lawyers, but for the limited purpose "of showing that her problem was not one of not paying lawyers," not to show Schnader's alleged malpractice. N.T. at 121. (Ex. D-7, check to James Freeman, Esq. for $660.85 on 6/11/90, and check to Mr. Weiman for $3,000 on 10/9/90.) This testimony does not affect this court's conclusion about the propriety of Judge Wilson's verdict in favor of plaintiff.

(2) Defendant contends that the trial court failed to instruct the plaintiff to answer directly defense counsel's questions during cross-examination, despite defense counsel's repeated requests for the court to so instruct.

Defendant is apparently referring to N.T. at 39-41, in which defense counsel Weiman objects that witness-plaintiff Levit whom he is cross-examining, is being unresponsive, by "making self-serving statements and refusing to answer with a yes or no."

Even if the objection has merit, the record shows that the court satisfactorily cured the matter, by instructing the witness to answer the questions with a "yes or no" before explaining the answer. N.T. 41. This is one such curative exchange:

"The Court: Now you give him an opportunity to answer the question. If the answer is not responsive, object.

"Mr. Weiman: Your Honor, I ask that the witness be instructed that when I ask a yes or no question, he answer yes or no and then explain.

"The Court: If you can answer yes or no, do so.

"The Witness: Yes, sir.

"The Court: Then you may explain it.

"The Witness: Sure."

(3) Defendant contends in her motion that the trial court erred in denying defendant's request for an involuntary nonsuit.

Defendant is referring to Judge Wilson's denial of defendant's motion at the close of plaintiff's case. Defendant had moved to "dismiss on the basis that Saul Levit is the only named party in interest in this matter, he could not adequately testify as to how much time he had billed . . . Ms. Kutcher has paid more than [Levit] billed and therefore his claim has been satisfied and accordingly, I would that your Honor dismiss this action at this time." N.T. at 92. Levit's attorney, responded that: (1) Levit was suing to recover on behalf of Schnader; (2) defendant did not raise the matter earlier; (3) the problem could be cured by amending the caption; and (4) no prejudice to defendant had occurred.

As discussed in Part V, *supra*, Judge Wilson's denial of defendant's motion to dismiss was proper. Pursuant

to Pa.R.C.P. 230.1, the court will enter a nonsuit at the close of plaintiff's case only if the "plaintiff has failed to establish a right to relief. If the motion is not granted, the trial shall proceed." Here, plaintiff Levit had established a right to relief in his case-in-chief, and denial of defendant's for a nonsuit was justified. Further, amending the caption pursuant to Pa.R.C.P. 1033 is proper in this matter.

(4) Defendant contends that the judgment wrongly awards pre-judgment interest to plaintiff in the absence of evidence providing the court with a basis for awarding pre-judgment interest. This claim is devoid of merit.[2] The reviewing court has authority to mold the verdict by adding pre-judgment interest even when the issue was not submitted to the jury. *Biller v. Ziegler,* 406 Pa. Super. 1, 12, 593 A.2d 436, 442 (1991). In a contract action award of pre-judgment interest does not depend upon discretion but is a legal right. *Id.* (citing *Gold and Co. Inc. v. Northeast Theater Corp.,* 281 Pa. Super. 69, 421 A.2d 1151 (1980)). In short, the award of pre-judgment interest here was properly added to the verdict amount by the judge. Moreover, the proper approach to follow, if defendant thinks that the award was excessive, is to request remittitur of the award.

(5) Defendant contends in two separate points in her motion that the "verdict is contrary to law" and "contrary to the weight of the evidence." These general statements do not conform to Pa.R.C.P. 227.1(b)(2) (amended April 23, 1985), which requires specificity in the statement of the grounds for post-trial motion

2. We note that delay damages are not at issue here, since this case sounds in contract and delay damages are limited to tort actions for bodily injury, death, or property damage. Pa.R.C.P. 238. See *Biller v. Ziegler, supra* at 11 n.5, 593 A.2d at 441 n.5 (delay damages per se *not* available in Pennsylvania for contract actions).

relief. Mere boilerplate language is disapproved: a post-trial motion must set forth the theories in support thereof "so that the lower court will know what it is being asked to decide." Explanatory comment to Rule 227.1. See *Dauphin Deposit Bank and Trust Co. v. Pifer,* 383 Pa. Super. 275, 282, 556 A.2d 904, 907-908 (1989) (issue on appeal claiming "verdict is against the weight of the evidence" is not preserved because appellant's post-trial motion presented their allegations in boiler-plate fashion contrary to requirements of Pa.R.C.P. 227.1(b) requiring specificity). Thus, we need not address those vague points.

Finally, we point out that post-trial motions following a case tried without a jury, like the case sub judice, are subject to precisely the same procedures as cases tried before a jury, under the "new consolidated post-trial practice under Rule 227.1." This follows from the well established principle that "the trial of an action by a judge sitting without a jury shall be conducted as nearly as may be as a trial by jury is conducted and the parties shall have like rights and privileges, including the right to suffer or move for nonsuit." Pa.R.C.P. 1038(a). "The decision of the trial judge may consist only of general findings as to all parties but shall dispose of all claims for relief." Pa.R.C.P. 1038(b). The note to Rule 1038 directs one to Rule 227.1 "[f]or post-trial relief following a trial without jury."

Accordingly, it is well-settled that "[t]he findings of a trial judge sitting without a jury carry the same weight as a jury verdict, and [appellate courts] will not disturb those findings on appeal absent an error of law or abuse of discretion." *Ecksel v. Orleans Construction Co.,* 360 Pa. Super. 119, 133, 519 A.2d 1021, 1028 (1987).

## VII.

For the foregoing reasons, defendant Kutcher's post-trial motions were denied.